J-S55006-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KAHHIM ODOM, | |
| Appellant | No. 1737 EDA 2013 |

Appeal from the Judgment of Sentence April 22, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002652-2012

BEFORE:  BOWES, SHOGAN, and OTT, JJ.

MEMORANDUM BY BOWES, J.:                **FILED SEPTEMBER 16, 2014**

Kahhim Odom appeals from the judgment of sentence of life imprisonment that was imposed by the trial court after a jury convicted him of first degree murder, conspiracy, carrying an unlicensed firearm, carrying a firearm in public in Philadelphia, and possession of an instrument of crime. We affirm.

Appellant and his co-defendant, Benderick Sterns, were convicted based upon the testimony of three eyewitnesses to the November 27, 2011 shooting death of Rymeek Horton.  Additionally, Sterns admitted to killing Mr. Horton to Stephon Brandon.  Appellant also admitted to being involved in killing Mr. Horton to Mr. Brandon as well as Paula Sharp.  The trial court aptly delineated the evidence adduced at trial:

On November 27, 2011, the night Rymeek Horton ("the decedent") was killed, he, Amir Jones ("Amir"), Amir's brother Omar Jones ("Omar"), and Ramil Andrews were hanging out, smoking marijuana in front of Amir's and Omar's grandmother's house on Malcom Street, a few houses down from Frazier Street in Philadelphia. Amir testified that they shared one bag of marijuana, and then Omar and the decedent decided to go down Frazier Street, in the direction away from Whitby Avenue, to get some more. The decedent turned back and began to walk back toward his aunt and uncle's house on Malcom Street to tell his uncle to leave the door unlocked.

Amir and Omar then saw two men start running down Frazier Street, from the direction of Whitby Avenue, firing guns at the decedent. One of them was wearing a gray hoodie, the other had on a dark hoodie. Amir and Omar both identified the man in the dark hoodie as [Appellant] and the man in the gray hoodie as [Appellant's] co-defendant, Sterns. Sterns' gun jammed, but he cleared the jam and continued shooting. Omar ran, heard the decedent scream "Ouch," turned around, and saw the decedent lying on the ground.

When the first shots rang out, Vance Bradley ("Bradley") was in his house at 5628 Malcom Street. Bradley heard four shots and then a pause, and then he went to look out his door. He saw the decedent lying just in front of his house, about three feet from the sidewalk, in the street.

Bradley testified that he saw [Appellant] and Sterns walk toward the decedent—[Appellant] was wearing a dark hoodie, and Sterns was wearing a gray hoodie, but Bradley could see both their faces. Both men had guns. Sterns stood over the decedent, [Appellant] just a few feet behind him, and [Sterns] fired four more shots at the decedent's head. Bradley then saw both [Appellant] and Sterns run back up Frazier Street toward Whitby Avenue.

Prior to the shots being fired, Jeffrey Taylor ("Taylor") arrived at home and parked his car between Malcom Street and Whitby Avenue on Frazier Street. As he walked down Frazier Street and then down Whitby Avenue, he saw two men get out of a white Chevrolet Impala parked on Whitby Avenue near Frazier Street. One wore a gray hoodie, the other wore a dark hoodie. The two men walked toward the intersection of Malcom

and Frazier Streets. Taylor continued walking home, but then heard gunshots from the direction of that intersection. He looked back toward the sound of the gunshots and saw the same two men running back, guns in hand, and getting back in the car, which then drove off.

The night after the shooting, Stephon "Buddha" Brandon ("Brandon") and [Appellant] were at Paula Sharp's house. Brandon expressed concern that people in the neighborhood would think he had killed the decedent, as the two men had had an argument over drug sales. [Appellant] responded to Brandon's concern by saying, "You don't know what is going on. Me and that [racial slur] had a shootout and things got real." N.T. 4/11/2013 at 52-53. [Appellant] became upset and then left Sharp's house. The next day, [Appellant] was again at Sharp's house. Sharp asked [Appellant] about what happened to the decedent, and [Appellant] told her that "him and his boys went to take care of it." [*Id*.] at 55.

Trial Court Opinion, 11/21/13, at 2-4 (footnotes and extraneous citations to record omitted). The Commonwealth established that the victim died from multiple gunshot wounds, including three to the head.

This appeal followed imposition of the above-described sentence. Appellant raises two arguments on appeal:

A. Whether Appellant is entitled to an arrest of judgment as to each charge, because the evidence presented at trial was insufficient for a finder of fact to render a guilty verdict beyond a reasonable doubt.

B. Whether the Court erred in denying Appellant's request for a mistrial, due to the Commonwealth's *Brady* violation.

Appellant's brief at 6.

We first recite our standard of review regarding the sufficiency of the evidence.

- 3 -

The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

**Commonwealth v. Slocum**, 86 A.3d 272, 275 (Pa.Super. 2014) (citation omitted).

Appellant first challenges his convictions for first-degree murder and conspiracy. "There are three elements of first-degree murder: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill." **Commonwealth v. Jordan**, 65 A.3d 318, 323 (Pa. 2013) (18 Pa.C.S. § 2502(a)). Herein, Appellant assails the evidence supporting the jury's finding that he possessed the specific intent to kill Mr. Horton. The Commonwealth's evidence was that Appellant possessed a gun and, along

with Sterns, repeatedly shot at the fleeing victim, who was struck in the back and neck by the bullets. A jury can properly conclude that the defendant had the specific intent to kill when he runs after a fleeing victim and repeatedly shoots him. ***Commonwealth v. Geathers***, 847 A.2d 730, 737 (Pa.Super. 2004). Additionally, Appellant stood and watched his cohort shoot the victim in the head three times after the victim was immobilized from the other bullet wounds. Hence, we conclude that the evidence was sufficient to establish that Appellant had the specific intent to kill the victim.

Appellant also maintains that he was not guilty of conspiracy. The crime of conspiracy is set forth in 18 Pa.C.S. § 903(a):

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
>> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>>
>> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

Under this provision, the Commonwealth must prove that "1) the defendant entered into an agreement with another to commit or aid in the commission of a crime; 2) he shared the criminal intent with that other person; and 3) an overt act was committed in furtherance of the conspiracy." ***Commonwealth v. Nypaver***, 69 A.3d 708, 715 (Pa.Super. 2013) (citation omitted). We utilize four factors "in deciding if a conspiracy

existed. Those factors are: '(1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy.'" *Id*. at 715 (partially quoting **Commonwealth v. Feliciano**, 67 A.3d 19, 25 (Pa.Super. 2013)(*en banc*)).

Ignoring the evidence presented by the Commonwealth, Appellant maintains that he was hiding behind a car when the victim was killed and was merely a bystander who witnessed Sterns kill Mr. Horton. However, the evidence adduced by the Commonwealth established the following. Appellant and Sterns associated with each other by arriving at the scene of the crime together, jointly shooting at the victim, and then fleeing after he was dead. Appellant admitted to Ms. Sharp and Mr. Brandon that he participated in the killing of the victim. Hence, the evidence was sufficient to support the conviction of conspiracy since all four factors necessary to establish a conspiracy were present herein.

Appellant also challenges his firearms convictions.[1] He was adjudged guilty under 18 Pa.C.S. § 6106(a), firearms not to be carried without a

_____

[1] We note that the trial court opined that the two firearms convictions were infirm since the Commonwealth failed to establish the barrel length of Appellant's gun. Trial Court Opinion, 12/6/13, at 9; *see* 18 Pa.C.S. § 6102 (defining "firearm" for purposes of the Uniform Firearms Act and outlining that the barrel length of pistols, revolvers, shotguns, and rifles may not exceed a certain number of inches to be a firearm for purposes of that Act). However, in this appeal, Appellant does **not** challenge either of his firearms convictions on this basis. It is well-established that this Court is prohibited

(Footnote Continued Next Page)

license, which states, with exceptions inapplicable herein, that "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree." Appellant's challenge to his offense is that no one established that he concealed his gun and that there was no proof the firearm was operable.

However, Mr. Taylor stated that he saw two men, one wearing a grey hoodie and the other wearing a dark hoodie, arrive near the site of the shooting in a car. Mr. Taylor continued that they exited the car, that he heard gunshots, and that the same two men then re-entered the car. Other witnesses established that Appellant was wearing a dark hoodie and that Sterns was wearing a grey hoodie. The Commonwealth is entitled to all the inferences created by the evidence and Mr. Taylor's testimony established that Appellant, who was carrying his weapon, arrived at the crime scene inside a vehicle, and then Appellant re-entered that car after the shooting. Since Appellant carried an unlicensed firearm "in any vehicle," the evidence was sufficient to support this crime.

Appellant's operability position is also leveled in connection with his challenge to 18 Pa.C.S. § 6108, carrying firearms on public streets or public

(Footnote Continued) ───────────────

from raising a contention *sua sponte*. **Commonwealth v. Pitts**, 981 A.2d 875 (Pa. 2009). Hence, we are barred from overturning the firearms convictions herein on a ground not raised by the Appellant.

property in Philadelphia, which outlines that, "[n]o person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless" he is licensed or exempt from licensing.

We conclude that the evidence establishes that Appellant's gun was functional. Specifically, Omar Jones testified that he saw Appellant firing his firearm. Additionally, Appellant admitted to Mr. Brandon that he had a shootout with the victim. Appellant claims that his gun jammed, but the evidence established that he fired the weapon four times before it ceased to fire. N.T. Trial, 4/12/13, at 100. Hence, it was operable. We therefore reject Appellant's challenges to his convictions under the Uniform Firearms Act.

Appellant's next position is that the trial court improperly failed to grant him a mistrial, which was requested based upon a purported violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

> [A] trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. . . . In reviewing a trial court's denial of a motion for a mistrial, our standard is abuse of discretion.

*Commonwealth v. Bryant*, 67 A.3d 716, 728 (Pa. 2013) (citations omitted).

In this case, Appellant presented Dominique Evans who provided an alibi defense and reported that Appellant was in his company when the shooting occurred. Appellant's ***Brady*** argument involves the fact that a detective interviewed Evans and Evans told the detective that Appellant was with him during the timeframe of the shooting. Appellant's claim is that the Commonwealth violated ***Brady*** when it did not tell him about Evans' report to the detective. It is established that the reason behind ***Brady*** is to require the prosecution to provide to the defendant exculpatory evidence in the sole control of the Commonwealth. ***Commonwealth v. Paddy***, 800 A.2d 294 (Pa. 2002). Accordingly, "no ***Brady*** violation occurs if the evidence in question is available to the defense from non-governmental sources . . . or if the defendant knew, or with reasonable diligence could have known, of such evidence[.]" ***Id***. at 305; ***Accord Commonwealth v. Spotz***, 18 A.3d 244, 276 (Pa. 2011) ("There is no ***Brady*** violation when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to the defense from non-governmental sources.").

In this case, Appellant knew about Evans because he presented him as a witness. Appellant also suggests that the fact that Evans told police about the alibi would have aided Appellant's defense. However, Evans was aware of the interview and could have told Appellant about it. There simply was no ***Brady*** violation herein. Finding Appellant's assertions meritless, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/16/2014