COMMONWEALTH of Pennsylvania,
Appellee

v.

Myron P. NYPAVER, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 12, 2013.

Filed June 18, 2013.

Michael J. DeRiso, Pittsburgh, for appellant.

Robert E. Grimm, Assistant District Attorney, Smithfield, for Commonwealth, appellee.

BEFORE: BOWES, LAZARUS, and COLVILLE,* JJ.

OPINION BY BOWES, J.:

Myron P. Nypaver appeals from the judgment of sentence of two years probation, fines, fees, and restitution in the amount of $16,990. We affirm.

On March 7, 2012, a jury found Appellant, who was tried together with his wife Lisa Nypaver, guilty of one count each of theft by deception and conspiracy. The convictions arose from Appellant's receipt of unemployment benefits from March 6, 2010, until October 2, 2010, when he was ineligible to receive those payments due to the fact that he was on the payroll of his employer, Uniontown. Kimberly Marshall, City Clerk for Uniontown, testified as follows. Her administrative position entailed, among other things, keeping employment records for Uniontown employees. After becoming an employee on March 10, 1989, Appellant worked in various capacities, including code enforcement officer, assistant fire chief, and fire chief. He was continuously employed until Feb-

* Retired Senior Judge assigned to the Superior Court.

ruary 18, 2009, when he was laid off. Appellant was recalled for work on March 14, 2009, and he worked until December 31, 2009, when he again was separated from employment. Less than three months later, on March 6, 2010, Appellant was again recalled and worked continuously for Uniontown until October 6, 2010.

In April, July, and October 2010, Ms. Marshall received a quarterly statement from the Pennsylvania Department of Labor and Industry, (the "Department") which is responsible for the processing and payment of unemployment compensation claims. Uniontown is self-insured so that it must reimburse the Department in full for all unemployment payments made to its employees. On the three reports, the Department indicated that Appellant received unemployment compensation for the period of March 6, 2010, to October 2, 2010. On September 30, 2010, Ms. Marshall became aware that Appellant was receiving those benefits and initiated an investigation.

Ms. Kimberly Bury, an Employment Security Audit and Investigator employed by the Department, investigated the matter of Appellant's receipt of unemployment benefits when he was not unemployed. She testified as follows. A claimant can file unemployment claims over the internet. If that method is used, the initial application paperwork is sent to the employer, and the claimant is provided a personal identification number ("PIN") with which to file benefits. By utilizing the PIN and his or her social security number, the claimant can file bi-weekly claims for unemployment benefits over the internet. Additionally, benefits may be deposited directly into a checking or savings account or can be issued onto a debit card. A second PIN must be used to access the debit card. Ms. Bury established that, from March 6, 2010 to October 2, 2010,

Appellant filed his bi-weekly unemployment claims online and used a debit card to obtain his payments. The amount of benefits received on the debit card over the relevant period amounted to $16,990. The amount on the card was depleted by cash withdrawals and purchases.

Ms. Bury related that the Department provides information to claimants regarding the importance of safeguarding their PIN numbers, as follows: "[Y]our pin number protects you from another person trying to claim your benefits. Your pin has the same legal authority as your signature. Do not give your pin to anyone. Giving your pin to anyone, even family is not permitted." N.T. Trial, 3/5/12, at 68. Claimants are also advised, "If you think someone else knows your pin, change it immediately." Id. After Uniontown reported that Appellant received benefits while employed, Ms. Bury interviewed Appellant on November 16, 2010. Appellant told her that "he had no knowledge of who was continuing to file for his unemployment benefits, and that after he returned to work on March 6, 2010, that he did not file any additional benefits[.]" Id. at 72–73. Appellant also represented to Ms. Bury that "when he was laid off or returned to work on March 6, that he cut up his debit card[.]" Id. at 73.

The Commonwealth introduced into evidence a record of the transactions on Appellant's unemployment compensation debit card that were made after March 6, 2010, which consisted primarily of cash withdrawals. Pictures of the person who made some of those cash withdrawals were introduced into evidence. While the exhibits are not contained in the record certified to this Court for purposes of this appeal, the record indicates that they depicted Mrs. Nypaver withdrawing the funds. N.T. Trial, 3/6/12, at 78–79.

Steve Kontaxes, a financial controller under the Defense Department Contracts, a detective supervisor with the Fayette County District Attorney's Office, and captain of the Perryopolis Police Department, became involved in Appellant's investigation. On November 10, 2010, Detective Kontaxes interviewed both Appellant and his wife at their residence. During that interview, Mrs. Nypaver acknowledged to Detective Kontaxes that she knew about the unemployment claims, and said, in Appellant's presence, that she made them. Appellant told her, "I am not going to let you take the heat for this," and he then turned toward Detective Kontaxes and said, "I was with her when she did it." N.T. Trial, 3/6/12, at 32.

There was a stipulation to admit Exhibit Number 12, which was a portion of testimony that Appellant previously gave under oath. He swore that he bent and broke the debit card. Mrs. Nypaver testified at trial that she took the debit card from the trash and used it to make the withdrawals and purchases. She also said that Appellant had given her his two PINs, the one for filing claims as well as the one to use the debit card. She represented that she completed the false claims online and that Appellant had no knowledge of any of her activities. Even though Appellant swore that the card was destroyed, it also was admitted into evidence.

Based on this evidence, a jury convicted Appellant of conspiracy and theft, and the above-described sentence was imposed. Appellant filed a post-sentence motion, which included an allegation that the verdict was against the weight of the evidence. In this appeal that followed denial of that motion, Appellant raises these contentions:

[1]. Did the trial court err in assuming jurisdiction of this matter where the special provision of the unemployment compensation law at 43 P.S. § 871(a) provides for prosecution in a "summary proceeding."

[2]. Did the trial court err in refusing to admit evidence under Pennsylvania rule of evidence 404(a)?

[3]. Was the evidence presented sufficient to sustain a verdict of guilty on counts 1 and 6 [theft and conspiracy] of the information.

[4]. Was the jury verdict was against the weight of the evidence?

[5]. Did the trial court improperly influence [Appellant] to testify?

[6]. Was the jury verdict ... the product of jury error?

Appellant's brief at 4.

■ Appellant's first position is that the trial court lacked jurisdiction over this prosecution for wrongful receipt of unemployment benefits due to 43 P.S. § 871(a),[1] which is part of the Unemployment Com-

1. That statute provides:
Whoever makes a false statement or representation knowing it to be false, or knowingly fails to disclose a material fact to obtain or increase any compensation or other payment under this act or under an employment security law of any other state or of the Federal Government or of a foreign government, either for himself or for any other person, shall upon conviction thereof in a summary proceeding, be sentenced to pay a fine of not less than one hundred dollars nor more than one thousand dollars, or shall be sentenced to imprisonment for not longer than thirty days, or both, and each such false statement or representation or failure to disclose a material fact shall constitute a separate offense. In addition to any other sanction, an individual convicted under this subsection shall be ordered to make restitution of the compensation to which the individual was not entitled and of interest on that compensation[.]

43 P.S. § 871(a).

pensation Law. In pertinent part, 43 P.S. § 871(a) states, "Whoever makes a false statement or representation knowing it to be false ... to obtain or increase any compensation or other payment under this act ... shall upon conviction thereof in a summary proceeding, be sentenced to pay a fine of not less than one hundred dollars nor more than one thousand dollars, or shall be sentenced to imprisonment for not longer than thirty days, or both[.]" Under the provision, a person must be ordered to make restitution for improperly received compensation, and each false statement or representation is a separate offense. Appellant contends that since § 871 is a specific penal provision applicable to the receipt of unemployment benefits, he could not be prosecuted under the more general Crimes Code for offenses he committed thereunder. Thus, the issue presented is whether § 871 provides the sole means by which the Commonwealth may prosecute crimes involving the receipt of unemployment benefits based upon false representations. This allegation "involves statutory construction, which is a question of law; thus, our review is plenary." *Commonwealth v. Garzone*, 613 Pa. 481, 34 A.3d 67, 74 (2012).

Appellant refers us to *Commonwealth v. Buzak*, 197 Pa.Super. 514, 179 A.2d 248 (1962). Therein, we interpreted § 871 and concluded that it prevented a person from being prosecuted under the 1939 Penal Code, which was succeeded by the Crimes Code of 1972. The sole question presented was "whether a defendant who knowingly makes a false representation, thereby obtaining compensation under the Unemployment Compensation Law, as amended in 1955, which provides for conviction in a summary proceeding, may be indicted for a felony under the Penal Code." The defendants in that case were charged with felony theft under the Penal Code after they obtained unemployment

benefits by fraudulently claiming that they were unemployed. The indictments were quashed, and we affirmed on appeal. We held that § 871 of the Unemployment Compensation Law was intended by the legislature to exclusively cover situations where a person obtains unemployment benefits by false representations. To achieve our holding, we applied the maxim that the law does not "permit prosecutions under the general provisions of a penal code when there are special penal provisions available." *Id.* at 250. This principle is outlined in 1 Pa.C.S. § 1933 (emphases added):

> Whenever a general provision in a statute shall be in conflict with a special provision **in the same or another statute,** the two shall be construed, if possible, so that effect may be given to both. **If the conflict between the two provisions is irreconcilable, the special provisions shall prevail** and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

This rule of law has been applied in other scenarios to prohibit prosecutions under the general Crimes Code where another legislative enactment contains a specific penal provision applicable to activities covered by its strictures. *See Commonwealth v. Lussi*, 562 Pa. 621, 757 A.2d 361 (2000) (locally elected township tax collector could not be prosecuted under Crimes Code for theft and receiving stolen property where his conduct of stealing tax money was specifically penalized as embezzlement under Local Tax Collection Law); *Commonwealth v. Bidner*, 282 Pa.Super. 100, 422 A.2d 847, 850 (1980) (defendant could not be charged with crimes under Crimes Code where his conduct violated a penal

provision of the Election Code, which enacted a comprehensive category of offenses and penalties; "the Crimes Code was not meant to prevail over the specific penalty measures of the Election Code"); *Commonwealth v. Vukovich*, 301 Pa.Super. 111, 447 A.2d 267 (1982) (vacating defendant's convictions for forgery and conspiracy to commit forgery under the general Crimes Code where they arose from his use of a forged prescription to obtain controlled substances based upon the fact that the Pharmacy Act of 1961 had applicable penal provision specifically making it a misdemeanor to a use forged prescriptions to obtain a controlled substance).

However, since dissemination of all of the above decisions discussing whether a prosecution under the Crimes Code can proceed where a defendant's conduct is penalized under another act specifically covering the conduct, the principle applied in those cases was abrogated by the 2002 enactment of 42 Pa.C.S. § 9303, which states:

> Notwithstanding the provisions of 1 Pa.C.S. § 1933 (relating to particular controls general) or any other statute to the contrary, where the same conduct of a defendant violates more than one criminal statute, the defendant may be prosecuted under all available statutory criminal provisions without regard to the generality or specificity of the statutes.

Thus, the enactment of 42 Pa.C.S. § 9303 has halted operation of section 1933's "general-specific" rule of statutory construction in the context of criminal prosecutions, and those cases, which applied that concept as a basis for their holdings, are no longer precedential. Indeed, in *Commonwealth v. Estman*, 591 Pa. 116, 915 A.2d 1191 (2007), the Supreme Court recognized that § 9303 superceded its decision in *Lussi* and held that, under the *ex post facto* clause, § 9303 could not be applied to conduct occurring prior to its passage. Hence, we reject Appellant's first position.

■■■ We now address Appellant's third issue, that the evidence was insufficient to sustain his convictions. We do so since, if he were to prevail on that position, he would be entitled to be discharged rather than awarded a new trial. We review his contention under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Fabian*, 60 A.3d 146, 150–51 (Pa.Super.2013) (quoting *Common-*

*wealth v. Jones,* 886 A.2d 689, 704 (Pa.Super.2005)).

Appellant's position is straightforward—his wife stole the unemployment benefits of her own accord and that he was uninvolved in the crime. Appellant points out that, when they were originally approached regarding the matter, his wife immediately told Detective Kontaxes that she used Appellant's information to file the bi-weekly unemployment compensation claims and to use the debit card. She also gave a written confession to another detective. Furthermore, Mrs. Nypaver testified at trial that she acted alone, took the money to support a drug addiction, and Appellant was unaware of her nefarious activities. Finally, Appellant relies upon the fact that his wife was photographed making the cash withdrawals from the unemployment compensation debit card.

 . Appellant was convicted under 18 Pa.C.S. § 3922(a)(1), theft by deception, which states, "A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally … creates or reinforces a false impression[.]" The jury also found him guilty of conspiracy under 18 Pa.C.S. § 903. "Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy." *Commonwealth v. Knox,* 50 A.3d 749, 755 (Pa.Super.2012). Thus, if the evidence was sufficient to sustain Appellant's conviction for conspiracy with Mrs. Nypaver, he is criminally responsible for his wife's theft.

The crime of conspiracy is set forth in 18 Pa.C.S. § 903(a):

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

 Pursuant to § 6903, the Commonwealth must establish that "1) the defendant entered into an agreement with another to commit or aid in the commission of a crime; 2) he shared the criminal intent with that other person; and 3) an overt act was committed in furtherance of the conspiracy." *Commonwealth v. Knox, supra* at 755. The Commonwealth does not have to prove that there was an express agreement to perform the criminal act; rather, a shared understanding that the crime would be committed is sufficient. *Id.* This Court has indicated that four factors are to be utilized "in deciding if a conspiracy existed. Those factors [are]: '(1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy.'" *Commonwealth v. Feliciano,* 67 A.3d 19, 25 (Pa.Super.2013) (quoting *Commonwealth v. Lambert,* 795 A.2d 1010, 1016 (Pa.Super.2002)).

Herein, Appellant was married to the perpetrator, and accordingly, there was a strong association between them. Appellant evidenced guilty knowledge of the crime when he falsely told Ms. Bury and issued a sworn statement indicating that he rendered the debit card incapable of use by breaking it. Appellant, despite expressly being told not to give the information to family members, gave Mrs. Nypaver his PIN to file his unemployment

benefits as well as his PIN to use the debit card. He thus participated in her perpetration of the theft. Finally, Appellant made an admission that he was with his wife when she committed the offense. Specifically, Appellant told his wife, "I am not going to let you take the heat for this," and then he turned toward Detective Kontaxes and said, "I was with her when she did it." N.T. Trial, 3/6/12, at 32. Hence, all four factors establishing the existence of a conspiracy are present herein, and we conclude that the evidence was sufficient to support Appellant's conspiracy conviction and thereby also was sufficient to support his theft conviction.

■ We now address Appellant's second issue, which is that he should have been able to question his wife at trial about a pending matter wherein she was charged with forgery, theft, and access device fraud. Initially, we observe that our standard of review regarding the trial court's evidentiary rulings is deferential. *Commonwealth v. Hernandez*, 39 A.3d 406 (Pa.Super.2012). Accordingly,

> The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Id.* at 411 (quoting *Commonwealth v. Herb*, 852 A.2d 356, 363 (Pa.Super.2004)). Pa.R.E. 404 (amended effective January 17, 2013) prohibits the use of such proof. At the time of Appellant's trial, it stated, "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or

trait[.]" Pa.R.E. 404(a)(1). Pa.R.E. 404 also provided, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(2).

This rule of evidence encompasses the principle that, "Generally, evidence of prior or bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity." *Commonwealth v. Ross*, 57 A.3d 85, 98 (Pa.Super.2012) (quoting *Commonwealth v. Sherwood*, 603 Pa. 92, 982 A.2d 483 (2009)). Thus, the prior bad acts of Mrs. Nypaver, who was a defendant at trial, were inadmissible at trial.

■ Appellant argues that his wife opened the door to the questioning about the pending criminal charges when she testified that she used cocaine and stole the money to support her drug habit as well as when "Ms. Nypaver testified (R. 180a) that she had pled guilty in 1999 to sixty-eight (68) forgery counts." Appellant's brief at 14. Initially, we observe that Mrs. Nypaver never actually admitted to pleading guilty to sixty-eight forgery offenses. Instead, Appellant asked about the prior convictions, the Commonwealth objected, an off-the-record discussion was held, and the witness never responded to the question. N.T. Trial, 3/6/12, at 62. Thus, we cannot assume that she pled guilty to those offenses since that proof is not in evidence.

■ Appellant misperceives the concept of opening the door. A litigant opens the door to inadmissible evidence by presenting proof that creates a false impression refuted by the otherwise prohibited evidence. *See Commonwealth v. Puksar*, 597 Pa. 240, 951 A.2d 267, 280 (2008);

*Duchess v. Langston Corp.*, 709 A.2d 410, 412 (Pa.Super.1998). Thus, Mrs. Nypaver would have opened the door to questioning about prior bad acts if she had represented that she was an upright individual. Instead, she admitted that she filed the false unemployment compensation claims and used the money from those claims. Her testimony did not create the incorrect impression that she was a model citizen, which the questioning about the pending charges would have disproved. Thus, she did not open the door to questioning about prior bad acts.

Appellant also invokes an exception to the rule against use of evidence of prior crimes. At the time of Appellant's trial, Pa.R.E. 404(a)(1) (emphasis added) stated that there was an exception to the above-outlined general prohibition for "evidence of a pertinent trait of character of the accused is admissible **when offered by the accused, or by the prosecution** to rebut the same." Appellant was not the accused in the context outlined by this language. If Mrs. Nypaver sought to introduce evidence of a pertinent character trait, then this exception would apply.

 Finally, Appellant maintains that the prior bad acts evidence was subject to an exclusion on the prohibition against use of prior bad acts. That exemption relates to proof of identity. Under the exception, evidence of prior crimes can be introduced to prove the identity of the actor where there is a sufficient resemblance between the crime at issue and the other criminal act. The similarities must "describe a crime so distinctive in method and so similar to the charged crime that proof [that a person] committed one tends to prove [he] committed the other." *Commonwealth v. Selenski*, 18 A.3d 1229, 1233 (Pa.Super.2011).

We reject Appellant's invocation of this exemption for two reasons. First, there was no question that Mrs. Nypaver filed the claims and took the money from the debit card. Thus, her identity as a perpetrator was not an issue at trial and the proposed proof was not relevant. Second, Appellant fails to offer any specifics regarding the prior crimes for us to analyze whether they shared sufficient similarities to invoke the relevant exception to the prohibition against use of prior crimes evidence. Hence, we do not have enough information to ascertain whether the other crimes were admissible to establish her identify as the sole actor in this case.

Appellant's fourth contention is that his convictions are against the weight of the evidence. He references his wife's testimony that, without Appellant's knowledge or participation, she retrieved the debit card from the garbage after Appellant disposed of it, filed the false bi-weekly unemployment compensation claims with the PIN that Appellant provided to her, and used the debit card. Appellant also points to the fact that Mrs. Nypaver pled guilty to numerous forgery offenses prior to the marriage and to the surveillance photographs showing Mrs. Nypaver withdrawing the money from the debit card. Appellant maintains that the jury should have credited this proof that his wife acted alone and without his knowledge or participation.

 "[A] trial court's denial of a post-sentence motion 'based on a weight of the evidence claim is the least assailable of its rulings.'" *Commonwealth v. Sanders*, 42 A.3d 325, 331 (Pa.Super.2012) (partially quoting *Commonwealth v. Diggs*, 597 Pa. 28, 949 A.2d 873, 880 (2008)); *accord Commonwealth v. Brown*, 538 Pa. 410, 648 A.2d 1177, 1189–90 (1994) ("One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence[.]") (citation omit-

ted). In this setting, "an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." *Sanders, supra* at 331 (quoting *Commonwealth v. Champney*, 574 Pa. 435, 832 A.2d 403, 408 (2003)). We reverse the trial court's ruling only if the verdict "is so contrary to the evidence as to shock one's sense of justice." *Sanders, supra* at 331 (quoting *Champney, supra* at 408). Herein, we conclude that the trial court did not palpably abuse its discretion in concluding that the verdict does not shock one's sense of justice. The jury was permitted to credit the above outlined proof that Appellant participated in a conspiracy with his wife to steal the money and to reject Mrs. Nypaver's attestations that he did not know about her crimes. *Fabian, supra* at 151 (factfinder "is free to believe all, part or none of the evidence").

Appellant's penultimate position relates to the following: Appellant had decided not to testify at trial. The trial court colloquied him about this decision, informing him, as Appellant phrases it, "of every possible ramification of his failure to testify on his own behalf." Appellant's brief at 22. After the trial court's discussion, Appellant still elected not to testify, and the trial court accepted that decision as knowing, intelligent, and voluntary. N.T. Trial, 3/6/12, at 100. A recess of one hour and nineteen minutes in the trial proceedings followed the colloquy. After that recess, Appellant changed his mind about the matter and testified.

On appeal, Appellant maintains that the trial court's statements, which he does not suggest were incorrect, were so coercive that the court improperly induced him to testify against the advice of counsel and that he is entitled to a new trial.

However, at no point during the colloquy or prior to testifying did Appellant lodge any objection to the trial court's questioning. Appellant's failure to protest, to any extent, about the trial court's discussion of the potential consequences of his failure to testify results in the waiver of this contention for purposes of appeal. *Commonwealth v. May*, 584 Pa. 640, 887 A.2d 750, 761 (2005) (due to "absence of contemporaneous objections," defendant's claims were waived); *see also Commonwealth v. Lettau*, 604 Pa. 437, 986 A.2d 114, 121 (2009); *Commonwealth v. Baumhammers*, 599 Pa. 1, 960 A.2d 59, 73 (2008).

Appellant's final position is that the jury verdict was the product of error. Specifically, he references an interview one of the jurors gave to a local newspaper. The juror indicated therein that the jury used an improper definition of the crime of conspiracy to arrive at its verdict. *See* Appellant's brief at 27. It is axiomatic that a jury verdict may not be overturned or impeached by evidence regarding the deliberative process. We set forth the applicable principles in *Commonwealth v. Neff*, 860 A.2d 1063, 1068–69 (Pa.Super.2004) (quoting *Commonwealth v. Pierce*, 453 Pa. 319, 309 A.2d 371, 372 (1973)):

> We cannot accept the statement of jurors as to what transpired in the jury room as to the propriety or impropriety of a juror's conduct. To do so, would destroy the security of all verdicts and go far toward weakening the efficacy of trial by jury, so well grounded in our system of jurisprudence. Jurors cannot impeach their own verdict. Their deliberations are secret and their inviolability must be closely guarded. Only in clear cases of improper conduct by jurors, evidenced by competent testimony, should a verdict, which is fully sup-

ported by the evidence, be set aside and a new trial granted.

There is only one narrow exception to the no impeachment rule:

> The exception allows "post trial testimony of extraneous influences which might have affected (prejudiced) the jury during their deliberations." *Pittsburgh Nat'l Bank v. Mut. Life Ins. Co.*, 493 Pa. 96, 101, 425 A.2d 383, 386 (1981). Extraneous information has been defined as information that was not provided in open court or vocalized by the trial court via instructions. *Boring v. LaMarca*, 435 Pa.Super. 487, 493, 646 A.2d 1199, 1202 (1994) ... Under no circumstances may jurors testify about their subjective reasoning processes. *Id.*

In the present case, the juror did not indicate that the jury used information to arrive at its verdict that was not provided in open court or vocalized in instructions. Furthermore, Appellant raises no allegation that the trial court's definition of conspiracy, as outlined in the instructions, was incorrect. Appellant seeks to impeach the verdict based upon the subjective reasoning process of the jurors. This, he cannot do.

Judgment of sentence affirmed.

Judge COLVILLE Concurs in the Result.