J-S02018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN J.J. PREIMO | |
| Appellant | No. 2123 EDA 2015 |

Appeal from the Judgment of Sentence imposed June 9, 2011
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0005257-2009, CP-51-CR-0005258-
2009, CP-51-CR-0005256-2009

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, and MOULTON, JJ.

MEMORANDUM BY STABILE, J.:                     **FILED APRIL 26, 2017**

Appellant, John J.J. Preimo ("Preimo"), appeals from the judgment of

sentence imposed on June 9, 2011 in the Court of Common Pleas of

Philadelphia County following his conviction on multiple counts of forgery,

criminal conspiracy, theft by deception, and tampering with evidence.[1]

---

[1] 18 Pa.C.S.A. §§ 4101, 903, 3922, and 4910, respectively.  These crimes
are defined, in relevant part, as follows:

**Forgery:**  "A person is guilty of forgery if, with intent to defraud or injure
anyone, or with knowledge that he is facilitating a fraud or injury to be
perpetrated by anyone, the actor: (1) alters any writing of another without
his authority; [or] (2) makes, completes, executes, authenticates, issues or
transfers any writing so that it purports to be the act of another who did not
authorize that act, or to have been executed at a time or place or in a
numbered sequence other than was in fact the case, or to be a copy of an
original when no such original existed[.]"  18 Pa.C.S.A. § 4101(a)(1)-(2).

*(Footnote Continued Next Page)*

Preimo contends that the evidence was insufficient to support his convictions and that the trial court committed an evidentiary error. Following review, we affirm.

At the conclusion of an April 2011 waiver trial that spanned six days, the trial court found Preimo guilty. Preimo's convictions stemmed from a "fraudulent real estate scheme operated by [] Preimo in which he purported to buy and sell properties." Trial Court Rule 1925(a) Opinion, 4/28/16, at 3. As the trial court explained:

> In some circumstances, Preimo took money from would-be purchasers and led them to believe that they had purchased a home, while in other circumstances, Preimo took money from investors seeking to flip properties bought at auction and never provided any return. As part of the scheme, Preimo used forged

*(Footnote Continued)* ─────────────

**Conspiracy:** "A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime[.]" 18 Pa.C.S.A. § 903(a)(1).

**Theft by deception:** "A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally . . . creates or reinforces a false impression[.]" 18 Pa.C.S.A § 3922(a)(1).

**Tampering with evidence:** "A person commits a misdemeanor of the second degree if, believing that an official proceeding or investigation is pending or about to be instituted, he: (1) alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation; or (2) makes, presents or uses any record, document or thing knowing it to be false and with intent to mislead a public servant who is or may be engaged in such proceeding or investigation." 18 Pa.C.S.A. § 4910.

and otherwise fraudulent documents and attempted to cover up his dealings with lies and deceit once the victims started to demand their money back. At trial . . . Preimo attempted to shift the blame to co-defendant Michelle Williams ("Williams"). While this [c]ourt found Williams guilty for some of the crimes, this [c]ourt found that Preimo was at the head of the conspiracy and that the scheme was his creation. While Preimo testified on his own behalf asserting his innocence, this [c]ourt found him to be wholly incredible and indicated so at the time he was found guilty of the [] charges.

*Id.* at 3-4.[2]

On June 9, 2011, the trial court sentenced Preimo to an aggregate term of four to eight years in prison followed by ten years of reporting probation. Preimo did not file a direct appeal. On February 10, 2012, he filed a PCRA petition. Ultimately, by order entered on June 19, 2015, the PCRA court granted Preimo's petition requesting an appeal *nunc pro tunc* from the June 9, 2011 judgment of sentence.

Preimo timely filed the instant appeal as well as a Rule 1925(b) statement of errors complained of on appeal raising four issues, three of which he asks this Court to consider in this appeal:

I.     Whether the verdict was contrary to law as being based on insufficient evidence[?][3]

---

[2] Ms. Williams elected not to testify at trial. N.T. Trial, 4/12/11, at 250-53.

[3] In his Rule 1925(b) statement, Preimo identified seven subject areas of testimony in support of his insufficiency claim. Rule 1925(b) Statement, 8/10/15, at 1-2 (unnumbered). **See also** Trial Court Rule 1925(a) Opinion, 4/28/16, at 2-3.

II. Whether the trial court erred in finding that [Preimo] controlled the actions of Ms. Williams[?]

III. Whether the trial court erred in not allowing evidence of the property problem title with Patricia Bourke to be introduced into evidence[?]

Appellant's Brief at 9.

Appellant's first two issues involve sufficiency of evidence. As this Court reiterated in **Commonwealth v. Nypaver**, 69 A.3d 708 (Pa. Super. 2013):

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Id.** at 714 (quoting **Commonwealth v. Fabian**, 60 A.3d 146, 150–51 (Pa. Super. 2013) (additional citation omitted)).

In its Rule 1925(a) opinion, the trial court examined the evidence and testimony in the context of the crimes of which Preimo was convicted, as

well as Preimo's assertion regarding control over the actions of Ms. Williams. Trial Court Rule 1925(a) Opinion, 4/28/16, at 4-9. The trial court concluded that the testimony, as summarized in its opinion with citations to the record, "viewed in the light most favorable to the Commonwealth, was more than sufficient for this [c]ourt to find Preimo guilty, beyond a reasonable doubt," of the crimes with which he was charged. **Id.** at 9.

Again, this Court may not weigh the evidence or substitute our judgment for that of the trial court as fact-finder. **Nypaver**, 69 A.3d at 714. Further, we recognize that in passing upon the credibility of witnesses, the trial court as finder of fact was free to believe all, part or none of the evidence. **Id.** Based on our review of the record, we conclude that the evidence admitted at trial—viewed in the light most favorable to the Commonwealth—was sufficient to enable the trial judge, as fact-finder, to find every element of the crimes charged beyond a reasonable doubt. Therefore, the sufficiency challenges raised in Preimo's first two issues fail. We hereby incorporate by reference and adopt as our own the trial court's analysis of Preimo's sufficiency claims. **See** Trial Court Rule 1925(a) Opinion, 4/28/16, at 4-9.

In his third issue, Preimo contends that the trial court erred by not allowing evidence of a problem with the property title regarding 2619 Brown

Street, one of the properties involved in Preimo's dealings with Patricia Bourke.[4]  As such, Preimo raises a challenge to an evidentiary ruling.

In **Nypaver**, this Court explained:

[O]ur standard of review regarding the trial court's evidentiary rulings is deferential.  **Commonwealth v. Hernandez**, 39 A.3d 406 (Pa. Super. 2012).  Accordingly,

The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion.  An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

**Id.** at 411 (quoting **Commonwealth v. Herb**, 852 A.2d 356, 363 (Pa. Super. 2004)).

**Id.**, 69 A.3d at 716.

Preimo argues that the trial court abused its discretion "because the person behind the forgeries was a key contested fact that satisfied a required element of the charges directed at [Preimo].  The identity was at the heart of the inquiry."  Appellant's Brief at 26.

In the course of Preimo's direct testimony, he testified that the signatures of three of the Brown Street property's sellers, the Marsh

---

[4] In his Rule 1925(b) statement, Preimo does not identify the property involved in his evidentiary challenge.  The trial court surmised it was the Brown Street property.  Trial Court Rule 1925(a) Opinion, 4/28/16, at 10. In his brief, Preimo does identify the Brown Street property as the one at issue.  Appellant's Brief at 26.

brothers, were already on the deed when he attended the closing for the property in 2002. N.T. Trial, 4/11/11, at 131-32. He stated that he expressed a concern about the deed to the attorney for William Singer, another one of the sellers. *Id.* at 131. When Preimo mentioned that Singer also had previously expressed concerns, the prosecutor objected. *Id.* After the trial court explained that Preimo could not testify about what either Singer or his counsel said, his counsel took a different approach, asking Preimo instead whether he signed the deed for the Marsh brothers. *Id.* at 132. He replied that he did not sign for them, did not know where the signatures came from, and did not receive any information about the signatures. *Id.*

Preimo's counsel asked questions about the location of the closing and then asked Preimo if he had inquired about the Marsh brothers. *Id.* at 133. In response to Preimo's reply of "Correct," the following exchange took place between his counsel and the trial judge:

> Counsel: All right. And my understanding is that what was stated was objected to and you sustained that objection.
>
> The Court: Well, I understand that it came already signed. Other than hearsay, he doesn't know who did or didn't sign it.
>
> Counsel: Right. But you don't want to hear the statements with regards to --
>
> The Court: It's not that I don't want to hear it, it's how does it come in without it being hearsay?
>
> Counsel: Very good.

*Id.* at 133.

We find no abuse of discretion in the trial court's ruling regarding the attempted hearsay testimony. Further, as the trial court noted, "Moreover, this [c]ourt found Preimo's testimony to be wholly incredible and, as such, any introduction of hearsay statements through Preimo would not have been believed by this [c]ourt." Trial Court Rule 1925(a) Opinion, 4/28/16, at 11. Preimo's third issue fails for lack of merit.

Preimo is not entitled to relief on his sufficiency claims or his evidentiary challenge. Therefore, we shall affirm his judgment of sentence. In the event of further proceedings, the parties shall attach a copy of the trial court's April 28, 2016 opinion to their filings.

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/2017

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA    :
    :    CP-51-CR-0005256-2009
v.    :    CP-51-CR-0005257-2009
    :    CP-51-CR-0005258-2009
JOHN PREIMO    :

CP-51-CR-0005257-2009 Comm v Preimo, John J J
Opinion

7439556791

**OPINION**

FILED
APR 28 2016
Criminal Appeals Unit
First Judicial District of PA

CARPENTER, J.        APRIL 28, 2016

Defendant John Preimo ("Preimo") was charged with and convicted of two counts of Forgery, Criminal Conspiracy, two counts of Theft by Deception, and Tampering with Records on bill of information CP-51-CR-0005256-2009. Preimo was charged with and convicted of Forgery, Criminal Conspiracy, Theft by Deception, and Tampering with Records on bill of information CP-51-CR-0005257-2009. Preimo was charged and convicted of Criminal Conspiracy Engaging in Theft By Unlawful Taking, Theft by Deception, Tampering with Records, and Forgery on bill of information CP-51-CR-0005258-2009. This Court requests that the Superior Court uphold the convictions and affirm the sentence imposed in this matter.

**PROCEDURAL HISTORY**

On April, 6 2011, Preimo waived his right to a jury trial and following an appropriate colloquy ensuring that such waiver was knowingly and intelligently made,

this Court proceeded to trial. On April 13, 2011, this Court, de novo, and sitting without a jury, found Preimo guilty of multiple counts of Forgery, Criminal Conspiracy, Theft by Deception and Tampering with Evidence. On June 9, 2011, this Court sentenced Preimo to an aggregate sentence of 4-8 years of incarceration followed by 10 years of reporting probation.

On February 10, 2012, Preimo filed a PCRA petition. PCRA counsel was appointed and, on December 5, 2013, counsel filed an Amended PCRA Petition. On August 8, 2014, the Commonwealth filed a Motion to Dismiss. On June 19, 2015, this Court granted Preimo's petition in the nature of a request for a nunc pro tunc appeal from the judgment of sentence imposed on June 9, 2011.

On July 13, 2015, this court received a Notice of Appeal. On July 20, 2015, Preimo was served an Order directing him to file a concise statement of the matters complained on appeal pursuant to Pa.R.A.P.1925(b). On August 10, 2015, this court received Preimo's 1925(b) response which raised the following issues on appeal:

1. The evidence was insufficient on the charges of forgery, criminal conspiracy, theft by deception an tampering with records for the following reasons:
   a. Jonathan Clark was untruthful and contradictory on multiple aspects of his testimony. His testimony differed from a lawsuit he filed and there was no other documentation to back up his testimony. Thus his testimony should have been totally discounted.
   b. The second prosecution witness stated that he has no dealings with the defendant, had never met with him and only dealt with Michelle Williams, whose position with Apple Abstract was to manage the office and keep financial records.
   c. Michelle Williams was never hired to buy or sell real estate or set up deals. She was a title clerk only and not associated with Chicago Title Company.
   d. Patricia Bourke stated that only Michelle Williams brought her contract for Brown Street. She never stated that defendant had anything to do with the dealings or that he profited from them

2

e. Additionally, Ms. Bourke stated that defendant gave her a promissory note for her entire loss when there was a problem with the property titles.
f. Mr. Rubin stated that he and defendant had a contractual relationship and that all funds given to him were loans.
g. Two of Mr. Rubin's attorneys testified that defendant did not steal from Mr. Rubin and agreed to repay any money that he had borrowed.

2. [This] Court erred in not allowing evidence of the property problem title with Ms. Bourke to be introduced into evidence.

3. [This] Court erred in finding that the defendant controlled the actions of Ms. Williams. Any of the above crimes were committed by Michelle Williams and there was no evidence that the defendant controlled Ms. Williams as she was an independent contractor. Buying or selling property or making deals for property purchases was not within the scope of her employment.

4. [This] Court erred in denying defendant's request for a nunc pro tunc post-sentence motion.


## DISCUSSION

The discussion below provides the details of the fraudulent real estate scheme operated by defendant Preimo in which he purported to buy and sell properties. In some circumstances, Preimo took money from would-be purchasers and led them to believe that they had purchased a home, while in other circumstances, Preimo took money from investors seeking to flip properties bought at auction and never provided any return. As part of the scheme, Preimo used forged and otherwise fraudulent documents and attempted to cover up his dealings with lies and deceit once the victims started to demand their money back. At trial (and in these issues on appeal) Preimo attempted to shift the blame to co-defendant Michelle Williams ("Williams"). While this Court found Williams guilty for some of the crimes, this Court found that Preimo was at the head of the conspiracy and that the scheme was his creation. While Preimo

3

testified on his own behalf asserting his innocence, this Court found him to be wholly incredible and indicated so at the time he was found guilty of the instant charges.

With regard to the issues raised by Preimo in his 1925(b) statement, this Court first discusses Issues A and C together and then writes to Issues B and D separately.

### Sufficiency of the evidence / Preimo's responsibility

The standard applied when reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.[1] In applying this test, the Superior Court may not weigh the evidence and substitute its judgment for that of the fact-finder. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless, the evidence is so weak and inconclusive that as a matter of law, no probability of fact may be drawn from the combined circumstance.[2] The Commonwealth may satisfy its burden of proving an element of the crime beyond a reasonable doubt through the use of wholly circumstantial evidence. In applying the test, the whole record must be evaluated and all evidence received must be considered.[3] Additionally, any challenge to the sufficiency of the evidence must specify the element or elements upon which the evidence was insufficient; otherwise the claim is waived.[4]

---

[1] *Com. v. Heberling*, 678 A.2d 794, 795 (Pa. Super. 1996) (citing *Com. v. Williams*, 650 A.2d 420 (Pa. 1994)).
[2] *Commonwealth v. Cassidy*, 668 A.2d 1143, 1144 (Pa. Super. 1995).
[3] *Commonwealth. v. Valette*, 613 A.2d 548, 549 (Pa. 1992).
[4] *Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa. Super. 2008).

4

On appeal, Preimo asserts that the evidence was insufficient to support his convictions and that this Court erred in finding that Preimo controlled the actions of Williams in the at issue deceptive real estate operation. This Court disagrees. The testimony of all of the witnesses and victims amply supported the charges of Conspiracy, Theft, Forgery, and Tampering with Records. Specifically, Patricia Bourke testified that she was interested in investing in real estate and in 2007 was introduced to Preimo (not Williams) as a potential investor. Over the course of several meetings, Preimo told Bourke that his company "We Buy Anything" bought properties inexpensively, both at private sale and at auction, and then resold them for a profit.[5] Preimo also informed Bourke that co-defendant Williams acted as the title agent in his real estate dealings.[6] After hearing about Preimo's business, Bourke decided to invest with Preimo (not Williams) in the buying and selling of properties, specifically 2619 Brown Street, 2530 West Montgomery Avenue, 5440 West Oxford Avenue, 2084-86 Clarence Street, 4331 L Street, and 850-854 East Ontario Street.[7] In line with Preimo's established business model, Preimo would negotiate the buying of the designated properties and Williams would be the supposed title agent.[8] Bourke gave Preimo several checks totaling over $300,000 to buy the above designated properties, as she and Preimo had discussed.[9] However, Preimo never bought the properties, but cashed the checks as though such properties had been purchased and used Bourke's money for other purposes, including to "invest" in mineral rights on properties outside of

---

[5] N.T. 4/7/2011 at 72-79
[6] *Id.* at 77
[7] *Id.* at 76-77, 80-84, 93.
[8] *Id.* at 77.
[9] *Id.* at 85, 88-91.

Philadelphia and to pay off his debts.[10] Bourke demanded her money back and although Preimo promised to return it, he never did.[11]

With regard to 2619 Brown Street, Preimo set up an LLC with Bourke for the purchase of this property from the property owners, the Marshes, with co-defendant Williams acting as the purported title agent.[12] Preimo convinced Bourke that he had a plan to buy the property for approximately $150,000 and to resell it for over 800,000.[13] The property had a lien that would also be purchased. A deed was presented to Bourke supposedly documenting the sale from the owners (the Marshes) to the LLC and another document purporting to be a sales agreement from the LLC to a Vincent Olson.[14] Bourke investigated whether the sale of 2619 Brown had been recorded and found that it had not.[15] Preimo engaged in a series of lies to cover up that the 2619 Brown Street transaction had not occurred as planned and that Bourke's money had been used to pay off a debt of Preimo's and to purchase a lien on the property but not the property itself.[16]

Further, Robert Marsh and William Marsh testified that they, along with their brother, Carl Marsh, were the real owners of the 2619 Brown Street property, upon the death of their uncle, William Singer, and that they had never sold the property to Preimo or the LLC.[17] The testimony established that the deed shown to Bourke allegedly transferring the property away from the Marshes was forged.[18] Further the testimony

---

[10] *Id.* at 87-92,104, 156-57.
[11] *Id.* at 106, 157-58, 195.
[12] *Id.* at 120-22.
[13] *Id.* at 182-83.
[14] *Id.* at 138-40.
[15] *Id.* at 153-54.
[16] *Id.* at 145-149, 156-57, 195, 199-200.
[17] *Id.* at 5-6.
[18] *Id.* at 7-20.

6

showed that the power of attorney form that gave authority to an Edward Marsh to transfer the property was also forged.[19] William Marsh testified that he does not know any one by the name of Edward Marsh and there is no one by that name in the Marsh family.[20] This Court found that the circumstantial evidence led to the logical conclusion that Preimo was responsible for the forged documents and that these forgeries were evidence of Preimo's intent to engage in a scheme to defraud the victims in this case, including Bourke. While Preimo testified in his own behalf and placed his own spin on the events regarding Ms. Bourke, this Court did not believe him. This Court weighed all the evidence presented and found that Preimo was primarily responsible for the forgeries.

In addition to Bourke's testimony, Seymour Rubin testified similarly regarding the circumstances under which he began investing with Preimo with the understanding that Preimo was in the real estate business and involved in buying properties at Sheriff's Sale and then either reselling them for a profit or keeping them as investments.[21] In 2007, Rubin invested in excess of $280,000 with Preimo for the purpose of buying and selling properties for profit, specifically the properties located at 2658 Emerald Street, 1861 East Madison Street, 4331 L Street, 1621-45 N. American Street in the City of Philadelphia,[22] as well as other properties in outside counties. Rubin never received any agreements of sale, deeds, or other documentation to support that Preimo had, in fact, purchased these properties and the only monies he ever received back from Preimo were one payment of approximately $25,000 and one payment of approximately

---

[19] Id.
[20] Id. at 47-56.
[21] N.T. 4/8/2011 at 19-21.
[22] Id. at 27-38.

7

$40,000.[23] Moreover, Rubin identified various receipts for payments in cash, from Preimo to Rubin, containing Rubin's signature that he never signed and for which he never received any such payments.[24] This Court found that Preimo was responsible for the forgeries of Rubin's name. Again, while Preimo testified and attempted to refute Rubin's account, this Court found him to be incredible.

Another witness, Jonathan Clark provided testimony that he believed that he had purchased a property located at 3324 E Street from Preimo only to discover that Preimo did not, in fact, own the property. In May 2007, Clark went to an auction and tendered the winning bid for the E Street property after which he made a $5000 deposit to the auction company.[25] After completing the deposit, Clark was told that the title work would be completed by Apple Abstract (Preimo's company) and, upon receiving the paperwork from Apple Abstract, made a $23,000 payment to the company.[26] Months later, after Clark had spent approximately $30,000 renovating the property, Clark learned that another entity owned the E Street property.[27] He was put in contact with Preimo who claimed that a mistake had been made such that clear title could not be passed and Preimo offered to pay Clark approximately $30,000 cash and have the balance paid from a claim to be submitted to the insurance company; however Clark never received any money from Preimo.[28] This Court found that Preimo was aware of the defective title at the time of the sale to Clark and sold it anyway without any intent to reimburse Clark for his loss. While some portions of Clark's testimony may have been

---

[23] *Id.* at 30, 55.
[24] *Id.* at 56-57.
[25] N.T. 4/6/2011 at 127-29.
[26] *Id.* at 129-30.
[27] *Id.* at 130-31, 135
[28] *Id.* at 131-34, 137.

contradictory, this Court evaluated Clark's testimony in light of all the other witnesses, including the testimony of Preimo himself.

Moreover, yet another person defrauded by Preimo, Angel Cruz, testified that he had purchased the same property as Clark (the E Street property) from Preimo in September 2008. Cruz entered an agreement with Preimo to pay a $2,000 deposit and then monthly payment of $400 for a total purchase price of $8,000.[29] This Court found that Cruz's testimony supported that of Clark and demonstrated that Preimo repeatedly took money from would-be purchasers and led them to believe that they had bought a property, when in fact they had not. Preimo's contention that Clark was not credible or provided contradictory testimony such that he was unbelievable is without merit. This Court found that Preimo had intentionally sold the E Street property under circumstances in which he knew he could not pass good title, hid this fact from both Clark and Cruz, and never returned the money he had taken. These facts supported the Theft and Conspiracy charges.

Much akin to the circumstances of Cruz and Clark, Defendant's real estate operation sold the house located at 2872 Jasper Street to two different buyers – the Vegas and Jaison Potts. Regarding this property, this Court heard the collective testimony of Angel Cruz, Fermin Latore, and Jaison Potts. The testimony established that Cruz had put Mr. Vega and his son-in-law, Latore, in touch with Preimo because the Vegas wished to purchase a home upon relocating from Puerto Rico.[30] After making a $2500 deposit, the Vegas paid an additional $17,500 for the property in

---

[29] *Id.* at 26.
[30] *Id.* at 27-30, 81-82.

9

September 2008 and the Vegas moved into the property.[31] The Vegas lived there for approximately one and a half years after which they were evicted[32] because unbeknownst to the Vegas, Preimo had sold the Jasper Street property to Jaison Potts. Potts testified that he bought 2872 Jasper Street through Preimo Real Estate from Washington Mutual Bank and made settlement on the property in January 2009 for $18,000.[33] After purchasing the property, Potts discovered that the property was occupied by the Vegas and ultimately sought to evict them from the property.

The above summarized testimony, viewed in the light most favorable to the Commonwealth, was more than sufficient for this Court to find Preimo guilty, beyond a reasonable doubt, of Forgery, Criminal Conspiracy, Theft by Deception, and Tampering with Records.

### Evidence regarding property title issues

On appeal, Preimo avers that this Court "erred in not allowing evidence of the property problem title with Ms. Bourke to be introduced into evidence." This Court disagrees. While the statement of error is not specific as to which property involved a problem title, this Court, from the context of the trial, assumes it to be the 2619 Brown Street property and has addressed it accordingly.

The admissibility of evidence is a matter within the sound discretion of the trial court and will not be reversed by a reviewing court absent an abuse of discretion.[34] An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill-will,

---

[31] *Id.* at 86-94.
[32] *Id.* at 94.
[33] *Id.* at 54-56.
[34] *Com. v. Weiss*, 776 A.2d 958, 967 (Pa. 2001).

10

partiality, prejudice, manifest unreasonableness, or misapplication of law.[35] In the instant matter, this Court sustained the Commonwealth's hearsay objections to Preimo providing testimony about what William Singer or his attorney, Larry Abel, had said regarding signatures on a deed to the Brown Street property. Specifically, the transcript provides:

> **MR. GOSSETT**: All right. And my understanding is that what was stated was objected to and you sustained that objection.
> **THE COURT**: Well, I understand that it came already signed. Other than hearsay, he doesn't know who did or didn't sign it.
> **MR. GOSSETT**: Right. But you don't want to hear the statements with regards to --
> **THE COURT**: It's not that I don't want to hear it, it's how does it come in without it being hearsay?
> **MR. GOSSETT**: Very good.[36]

In accordance with the Pennsylvania Rules of Evidence, this Court properly precluded the presentation of the hearsay statement. Moreover, this Court found Preimo's testimony to be wholly incredible and, as such, any introduction of hearsay statements through Preimo would not have been believed by this Court.


### Nunc pro tunc post-sentence motion request

On appeal, Preimo avers that this Court erred in denying his request to file post sentence motions *nunc pro tunc*. This claim is not properly raised in the instant proceeding, as the request to file post sentence motions was denied in the disposition of Preimo's PCRA petition, which is not subject of the instant appeal. The instant appeal is solely an appeal from the judgment of sentence entered by this Court on June 9, 2011. Nonetheless, even if the claim were properly presented, the claim has no merit, as Preimo

---

[35] *Com. v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013).
[36] N.T. 4/11/2011 at 133:14-25. For further context, see pages 131-35.

11

failed to satisfy the requisite prongs of *Pierce*[37] for obtaining relief based upon a claim of ineffective assistance of counsel.

## CONCLUSION

For the reasons set forth in this Opinion, the Superior Court should affirm this Court's finding of guilt, this Court's decision regarding the introduction of evidence, and the sentence imposed in this matter.

_____
Carpenter, J.

---

[37] *Com. v. Pierce*, 527 A.2d 973 (Pa. 1987).