J-A25010-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATTHEW JAMES VASQUEZ | : | |
| | : | |
| Appellant | : | No. 190 WDA 2021 |

Appeal from the Judgment of Sentence Entered May 11, 2020,
in the Court of Common Pleas of Washington County,
Criminal Division at No(s): CP-63-CR-0001486-2019.

BEFORE:  KUNSELMAN, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: APRIL 3, 2023**

Matthew James Vasquez appeals from the 20-to-40-year judgment of sentence entered after a jury convicted him of aggravated assault, conspiracy to commit aggravated assault, and simple assault.  We affirm.

This case concerns an incident on the evening of April 18, 2019, at the Slovak Club in Charleroi, Washington County.  Seven members of the Pagans Motorcycle Club, including Vasquez, attacked Mr. Troy Harris, a member of the rival Sutar Soldiers club.  Surveillance video shows the group filing into the club, Jason Huff (the first Pagan in line) promptly striking Mr. Harris, Vasquez throwing a punch, and the group moving down to the floor as the attack continued.  Less than a minute after entering the club, the seven Pagans rode away.  Mr. Harris was Life Flighted to treat his severe injuries.

As the investigation into the attack progressed, the Commonwealth charged the seven Pagans for their involvement. The Commonwealth also charged Michael Barringer (Pagans National Sergeant at Arms), Brian Keruskin (Fayette Pagans President), Zachary Yagnich (Slovak Club Vice President), and Jamie Granato (Vasquez's then fiancée).

Four of the Pagans present at the Slovak Club pled to aggravated assault and/or conspiracy to commit aggravated assault, as did Barringer and Keruskin.[1] Two did not: Vasquez, who was second in line, and Joseph Olinsky, who was sixth. The Commonwealth consolidated its cases against Vasquez and Olinsky for trial.

In preparing for trial, the parties became aware of three guns that were in the Slovak Club during the attack. First, Mrs. Michelle Harris (Mr. Harris' wife) had a gun in her purse that she had been unable to access while her husband was being assaulted. *See* N.T., Preliminary Hearing, 7/16/19, at 128. Second, Mr. Harris had a gun in his back pocket that was recovered when he arrived at the hospital. *See* N.T., Hearing, 1/23/20, at 41. Third, three minutes after the Pagans had left, Mrs. Harris picked up a gun and holster from where the group had beaten Mr. Harris to the floor, and she put the gun and holster in her purse. Vasquez and Olinsky claimed that they had seen Mr. Harris with this third gun as they approached him.

---

[1] Keruskin entered a *nolo contendere* plea; the others entered guilty pleas. At the time of trial in this case, charges remained pending against Paul Cochran, a Pagan who testified for the Commonwealth.

The parties extensively litigated the issue of the admissibility of Mr. Harris' gun before trial. At a hearing on the Commonwealth's motion *in limine*, the trial court announced that it would exclude any reference to Mr. Harris' gun "without prejudice" and revisit the issue if it became germane at trial. The trial court entered an order granting the motion and then a clarifying order following an *ex parte* hearing with the Commonwealth. On February 4, 2020, the morning of the first day of trial, Vasquez's counsel asked the court to reconsider its order should Vasquez testify. The trial court ruled that it would not exclude the Defendants' own testimony about Mr. Harris' gun.

Vasquez's former fiancée Granato testified for the Commonwealth as to her involvement with the Pagans and her interactions with Pagans members and with Slovak Club Vice President Yagnich before the attack on Mr. Harris. N.T., Trial Vol. II, 2/5/20, at 110–126. As detailed **infra**, the trial court ruled that Vasquez's cross-examination of Granato "opened the door" to inquiry into the abusive nature of their relationship. Granato therefore testified on redirect that Vasquez was abusive, including a specific incident when he ripped her off a motorcycle and threw her onto a guardrail. The trial court instructed the jury that the only purpose for which it could consider this testimony was to help judge Vasquez's credibility. N.T., Trial Vol. IV, 2/7/20, at 83.

Vasquez testified in his own defense. He said that Barringer had not told him to attack Mr. Harris; the only reason Vasquez hit Mr. Harris was that he saw a holstered gun on Mr. Harris' right leg. The Commonwealth cross-examined Vasquez about his testimony that Barringer had not told him to do

anything. Arguing to the trial court that this testimony misled the jury and "opened the door" to prove a conspiracy, the Commonwealth asked Vasquez about how six other Pagans "pled guilty to conspiracy," "took responsibility," and were therefore "sitting in state prison." N.T. Vol. III, 2/6/20, at 154–157. For each, the Commonwealth introduced into evidence the trial court's sentence orders, which the jury had while deliberating.

The jury found Vasquez guilty of aggravated assault, conspiracy to commit aggravated assault, and simple assault. It found him not guilty of attempted murder and conspiracy to commit murder. The trial court sentenced Vasquez to an aggregate term of 20 to 40 years of imprisonment. Vasquez filed post-sentence motions, which the trial court denied. Vasquez timely appealed. Vasquez complied with Pennsylvania Rule of Appellate Procedure 1925(b).

Vasquez raises the following issues for our review:

 I.   Did the Trial Court abuse its discretion by permitting the testimony of Ms. Granato about the prior bad acts of the Appellant?

 II.  Did the Trial Court abuse its discretion by prohibiting any questions about or references to Mr. Harris possessing a gun on the night in question?

 III. Did the Trial Court abuse its discretion by permitting the Commonwealth to enter into evidence the guilty pleas and sentence orders of non-testifying co-defendants in violation of the Confrontation Clause of the United States Constitution?

 IV.  Was the Trial Court's sentence a palpable abuse of discretion?

Vasquez's Brief at 6.

## I.    The admission of Vasquez's prior act was harmless error.

Vasquez first challenges the trial court's ruling admitting Granato's testimony that Vasquez was abusive during their relationship and that on one occasion he had ripped her off a motorcycle and thrown her to the guardrail. This Court reviews such an evidentiary ruling for an abuse of discretion. **Commonwealth v. Lang**, 275 A.3d 1072, 1077–78 (Pa. Super. 2022). "An abuse of discretion is not merely an error in judgment, but an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of the record." **Id.** at 1078 (quoting **Commonwealth v. Talbert**, 129 A.3d 536, 539 (Pa. Super. 2015).

The testimony at issue arose during the Commonwealth's case-in-chief. Granato testified on direct examination that because she was in a relationship with a Pagans member, she was called "property" and wore a "property patch."[2]  N.T., Trial Vol. II, 2/5/20, at 116.  On cross-examination, Vasquez asked Granato if she had a negative experience with the club ("For the most part, no.") and if she and Vasquez were otherwise "living a normal life" ("Yes."). **Id.** at 134–135.  He also asked about her property patch:

    Q    Now, you talk about property, you had a property patch.
         Does that mean that you're literally his property, what does
         that mean?

---

[2] Later, Maryland State Police Lieutenant Terry Katz gave expert testimony about Pagans "colors," the group's system of patches.  N.T., Trial Vol. III, 2/6/20, at 23, 32, 37–38.  Granato provided the only testimony about the "property patch" that she had worn as Vasquez's fiancée.

A       From what I took it as, that meant that, you know, when we were out at functions together, that was so everybody knew that you were with him.

Q       It wasn't like you were literally his property, then?

A       He never treated me that way.

*Id.* at 135.

At sidebar before Granato's redirect examination, the Commonwealth argued to the trial court that Vasquez's questions allowed it to ask Granato about Vasquez abusing her.[3]  Granato described the abuse *in camera*.  The court allowed the testimony over Vasquez's objection and preemptive motion for mistrial.  Granato testified:

Q       Jamie, you were asked some questions by Mr. Colafella about your relationship with [Vasquez], right?

A       Correct.

Q       Was your relationship with [Vasquez] a normal, loving relationship?

A       No.

Q       Can you explain to the jury what you mean by that?

A       I did not want to say anything in front of my family, because they don't know any of this.  He was very physically, mentally and emotionally abusive, for the majority of our relationship.

        We were in one instance at a bike an[d] car show in Belle Vernon, with probably about 40, 50 Pagans.  At the end of night, we were getting ready to go home, we pulled over to the side of the road, somebody was broken down, somebody needed something.  Our house was not five minutes from

_____

[3] The Commonwealth also proffered that it would elicit that Granato had been to bar fights, based on Vasquez questioning her about whether she had a negative experience with the club.  N.T., Trial Vol. II, at 139.

there. So I offered to go get what we needed from the house.

I got on the back of another member's bike. And [Vasquez] proceeded to come over and rip me off of the bike, throw me to the ground, hit me, and then he threw me over a guardrail.

Q  Did you seek treatment for that?

A  I did. I went to Mon Valley Hospital.

Q  And in up until your relationship ended, was physical abuse routine with [Vasquez]?

A  Normally, when he would drink.

Q  What would he do?

A  He would punch me, strangle me, suffocate me with a pillow.

*Id.* at 224–226.

Vasquez later testified that he did not abuse Granato as she claimed. The trial court instructed the jury that it could only consider Granato's testimony about the abuse to judge Vasquez's own credibility as a witness:

In this case, with regard to the Defendants, you heard evidence tending to show that Defendant Matthew Vasquez had previously been involved in some domestic incidents for which he is not on trial, and I'm speaking of the testimony of Jamie Granato. This evidence is not to be considered by you as evidence of his guilt. This evidence may be considered by you for only one purpose, and that is [to] help you judge the credibility of the Defendant, and the weight of the testimony given by the Defendant as a witness in the trial.

You must not regard this evidence as showing that the Defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt. It's only for the limited purpose that I just instructed you.

N.T., Trial Vol. IV, 2/7/20, at 83.

- 7 -

The trial court explained that Granato's testimony on redirect examination was admissible because Vasquez "opened the door" in cross-examining her. Trial Court Opinion, 10/13/21, at 15–18 (citing *Commonwealth v. Gilliard*, 446 A.2d 951, 954 (Pa. Super. 1982), *Commonwealth v. Miller*, 481 A.2d 1221 (Pa. Super. 1984), and *Commonwealth v. Smith*, 17 A.3d 873 (Pa. 2011)). Because Vasquez chose to ask Granato about her life and her property patch, the trial court ruled that the Commonwealth was free to explore that subject matter.

Vasquez argues that Granato's testimony about prior abuse was not admissible for any reason. Vasquez's Brief at 20–29. He submits that his questions were too narrow in scope to open the door to the Commonwealth's examination. Even if he had opened the door, Vasquez challenges the evidence as not relevant and as character evidence not admissible under Pennsylvania Rules of Evidence 402 and 404(b)(2). Vasquez complains that the trial court did not state on the record its balancing of the probative value and the potential for unfair prejudice under Rule 403. He further contends that the evidence of a collateral matter was not admissible to impeach Vasquez, who had not yet testified. Finally, he maintains that Rule 608(b)(1) prohibits the Commonwealth from attacking Vasquez's character for truthfulness with extrinsic evidence about specific instances of his conduct.

The Commonwealth agrees with the trial court, arguing that Vasquez opened the door to Granato's cross-examination. Commonwealth's Brief at 10–22. It posits that it could elaborate on defense counsel's open-ended

questions about her property patch, and it suggests that defense counsel's "normal life" question created a false impression that it could correct. Alternatively, the Commonwealth reasons that it could introduce evidence of Vasquez's prior bad act as *res gestae* evidence to tell the complete story of Vasquez's relationship with Granato. The Commonwealth adds that the trial court does not need to place its Rule 403 balancing test on the record, and that any objection to the jury instruction on impeachment was waived.

An initial hurdle in analyzing this issue is that the trial court's stated rationale for allowing this evidence differs from its limiting instruction. As noted, the trial court explained its ruling that the evidence was admissible because Vasquez opened the door. However, it instructed the jury that the **only** reason the jury could consider Granato's testimony that Vasquez abused her was to help judge Vasquez's credibility as a testifying witness. Because either theory of admissibility could allow the evidence, we will address both.

"Opening the door" is a way for one party's evidence to become admissible based on presentation by another party. "A litigant opens the door to [otherwise] inadmissible evidence by presenting proof that creates a false impression refuted by otherwise prohibited evidence." **Commonwealth v. Nypaver**, 69 A.3d 708, 716–17 (Pa. Super. 2013) (citations omitted). That is:

> [o]ne who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of that opening. The phrase 'opening the door' ... by cross examination involves a waiver. If [a] defendant delves into what would be

objectionable testimony on the part of the Commonwealth, then the Commonwealth can probe further into the objectionable area.

***Commonwealth v. Gilbert***, 269 A.3d 601, 613 (Pa. Super. 2022) (quoting

***Commonwealth v. Lewis***, 885 A.2d 51, 54–55 (Pa. Super. 2005)).

Pennsylvania Rule of Evidence 404 outlines the door-opening process for character evidence, which is otherwise inadmissible to prove actions in accordance with that character. Pa.R.E. 404(a)(1). Rule 404(a)(2)(A) permits a criminal defendant to "offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." In such instances, the Commonwealth's evidence of the defendant's character trait is limited to testimony about the defendant's reputation. Pa.R.E. 405(a). Specifically, "[i]n a criminal case, on cross-examination of a character witness, inquiry into allegations of other criminal conduct by the defendant, not resulting in conviction, is not permissible." Pa.R.E. 405(a)(2).

Rule 404 also provides for the admissibility of other instances of conduct, commonly called prior bad acts:

*(1) Prohibited Uses.* Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)–(2).

Among the recognized exceptions to the prohibition on evidence of prior bad acts is *res gestae*. Under this exception, evidence of a prior bad act is admissible "when relevant to furnish the complete story or context of events surrounding the crime." **Commonwealth v. Crispell**, 193 A.3d 919, 936 (Pa. 2018) (citations omitted). Because such evidence proves the alleged crime's "*immediate* context of happenings *near in time and place*," the prior bad acts must be part of the same transaction. **Commonwealth v. Green**, 76 A.3d 575, 584 & n.3 (Pa. Super. 2013) (citations omitted).

Here, the Commonwealth stated that Vasquez opened the door and created a "character issue" by trying to portray Vasquez as a boy scout, which created a misleading impression. N.T., Trial Vol. II, 2/5/20, at 143. We disagree. Even if we accepted the theory that having a "normal relationship" is a character trait that Vasquez opened the door for the Commonwealth to rebut, Rule 405(a)(2) prohibits inquiry into Vasquez's other criminal conduct that did not result in conviction. Vasquez was not charged or convicted for his conduct in allegedly throwing Granato off of the motorcycle.

Moreover, the Commonwealth's suggestion that Vasquez ripping Granato from a motorcycle is *res gestae* evidence of the attack on Mr. Harris fails because the incident was not part of the same transaction, instead occurring in a different location on a different day. **Green**, **supra**. Thus, this exception also fails.

To the extent that Vasquez's questions to Granato on cross-examination in the Commonwealths' case-in-chief opened the door to further examination

about Vasquez's character, a prior specific instance of abuse was not admissible to prove that character. Pa.R.E. 405(a)(2). As such, the trial court misapplied the law and therefore abused its discretion when it allowed evidence that Vasquez abused Granato under the theory that Vasquez opened the door.

The second theory the trial court gave for allowing Granato's testimony about prior abuse was for purposes of impeaching Vasquez (who later testified that he did not abuse Granato). N.T., Trial Vol. III, 2/6/20, at 88–89. This was the only reason why the trial court instructed the jury that it could consider Granato's testimony about the abuse. N.T., Trial Vol. IV, 2/7/20, at 83.[4] Putting aside that Vasquez had not yet testified when Granato purportedly impeached him, this theory likewise runs contrary to law.

It has long been the rule in Pennsylvania that a witness cannot be impeached on a collateral matter. *Commonwealth v. Petrillo*, 19 A.2d 288, 295 (Pa. 1941); *Commonwealth v. Guilford*, 861 A.2d 365, 369 (Pa. Super. 2004) (quoting *Commonwealth v. Bright*, 420 A.2d 714, 716 (Pa. Super. 1980) (noting that "a witness may not be contradicted on 'collateral' matters, … and a collateral matter is one which has no relationship to the case at trial"). Pennsylvania Rule of Evidence 608(b) limits attacks of a testifying witness' character for truthfulness with specific instances of conduct:

---

[4] The Commonwealth is correct that Vasquez waived any challenge to this instruction because he did not object to it. Here, we address the underlying evidentiary issue rather than the propriety of the instruction.

Except as provided in Rule 609 (relating to evidence of conviction of crime),

(1) the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct; however,

(2) in the discretion of the court, the credibility of a witness who testifies as to the reputation of another witness for truthfulness or untruthfulness may be attacked by cross-examination concerning specific instances of conduct (not including arrests) of the other witness, if they are probative of truthfulness or untruthfulness; but extrinsic evidence thereof is not admissible.

Pa.R.E. 608(b).

Here, the incident where Vasquez ripped Granato from a motorcycle is collateral because it is not related to the attack on Mr. Harris, nor does it involve Vasquez's truthfulness. Although Vasquez later refuted Granato's testimony about prior abuse, it runs contrary to law to admit Granato's testimony as a preemptive challenge to Vasquez's version of this uncharged incident. As such, the trial court abused its discretion in allowing this testimony.

However, this is not the end of the inquiry. In appropriate cases, this Court may assess *sua sponte* whether an error is harmless. **Commonwealth v. Hamlett**, 234 A.3d 486 (Pa. 2020). We do so here, recognizing the significant expense involved in bringing a case to trial as well as the interests of the parties in achieving a just resolution. For this Court to find harmless error, we must be "convinced beyond a reasonable doubt that the error is harmless." **Commonwealth v. Story**, 383 A.2d 155, 162 (Pa. 1978). That is, "the error could not have contributed to the verdict. Whenever there is a

- 13 -

reasonable possibility that an error might have contributed to the conviction, the error is not harmless." *Id.* at 164 (internal quotation marks omitted); *see Commonwealth v. Bieber*, 283 A.3d 866, 880 (Pa. Super. 2022) (rejecting a case-dependent lower standard). Here, the applicable test for harmless error is whether "the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." *Commonwealth v. Jones*, 240 A.3d 881, 892 (Pa. 2020) (quoting *Commonwealth v. Fulton*, 179 A.3d 475, 493 (Pa. 2018))."

The uncontradicted evidence in this case included a video of Vasquez filing into the Slovak Club with a group of Pagans and quickly attacking Harris. The prejudicial effect of the error was that the jury could assess Vasquez's credibility based on his prior violent acts. Even if we correct the error and accept Vasquez's testimony as true, Vasquez said that he punched Harris in the face. He did not claim self-defense. Although Vasquez denied that he agreed to assault Harris, he did not contradict that he was in the group of Pagans that entered the Slovak Club and had beaten Harris to the floor in a matter of seconds.[5] We conclude that the only reasonable inference from this evidence is that Vasquez was guilty of the offenses for which the jury convicted him. Therefore, the error was harmless, and we deny relief.

---

[5] In assessing the "properly admitted" evidence of guilt, we will not consider the admission of the co-conspirators' pleas discussed in Part III, *infra*.

## II.   Vasquez waived his issue about Mr. Harris' gun.

Next, Vasquez challenges the trial court's exclusion of evidence that Mr. Harris had a gun, including cross-examination of any witnesses at the Slovak Club and the portion of the surveillance video of Mrs. Harris retrieving the gun. He argues that the trial court abused its discretion by excluding defense evidence based on the anticipated strength of the Commonwealth's evidence. Vasquez's Brief at 30–38 (citing *Holmes v. South Carolina*, 547 U.S. 319 (2006)).

Vasquez has waived this issue.  Review of the litigation over the gun shows that that trial court initially granted the Commonwealth's motion *in limine* to exclude such evidence "without prejudice" and recognized that it could reconsider:

> [Vasquez's counsel]: Your Honor, I would just submit to the Court, that issue may become germane at some point during the course of trial.  So I understand the Court's ruling, but we may ask to revisit that during the course of testimony.
>
> THE COURT: Right.  Very good.  And I will.  If it [] becomes germane, yes, absolutely.
>
> [Vasquez's counsel]: Thank you, Your Honor.

*Id.* at 46.  The trial court entered an order granting the motion.  Order, 1/23/20, at 2 (unnumbered).

The next day, the Commonwealth filed another motion based on the defense proffer at the hearing, then seeking to bar "any mention at trial of [Mrs. Harris] being in possession of a gun on the night of the assault or [Mrs. Harris] as seen in the video handling a firearm."  Motion *in limine*, 1/24/20,

- 15 -

at 2 (unnumbered). After an *ex parte* hearing with the prosecutor, the trial court entered an order purporting to clarify its previous order:

> AND NOW this 30th day of January 2020, upon motion of the Commonwealth, the Court hereby grants the Commonwealth's Motion in Limine concerning ANY reference to a firearm being possessed by the victim. This order also prohibits any reference to a firearm being handled by the victim's wife after the alleged crimes. This shall further prohibit defense counsel from asking questions of witnesses concerning ANY firearm, showing portions of the video of the Slovak Club, and still shots of the victim's wife with a firearm after the alleged crime. The Court is hereby clarifying its previous order of January 23, 2020, granting the Commonwealth's Motion to exclude reference to a firearm.

Order, 1/30/20.

The morning of trial, the parties addressed the matter further. Vasquez's counsel requested that Vasquez be permitted to testify that he saw that Mr. Harris had a gun.[6] The trial court candidly admitted that it had not considered that the defendants could provide their own testimony. The court announced that it would stand by its ruling, to revisit before the defendants testified. N.T., Motion, 2/4/20, at 12, 25. The trial court later revisited the matter and addressed counsel regarding the exclusion of the guns:

> I said this morning, frankly, I'm sticking to my guns as far as everything else is concerned. But as far as . . . a Defendant giving his supposed observations in real time, not what he heard, what he supposedly saw, I have a hard time excluding that.

---

[6] Vasquez's counsel clarified that this request was only for Vasquez's own testimony. N.T., Motion, 2/4/20, at 6.

- 16 -

N.T., Trial Vol. I, 2/4/20, at 218.  Vasquez did not make any additional requests to question witnesses about Mr. Harris' guns or to present the surveillance video to the jury.

Pennsylvania Rule of Evidence 103 provides:

**(a) Preserving a Claim of Error.**  A party may claim error in a ruling to admit or exclude evidence only:

(1) if the ruling admits evidence, a party, on the record:

(A) makes a timely objection, motion to strike, or motion *in limine*; and

(B) states the specific ground, unless it was apparent from the context; or

(2) if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.

**(b) Not Needing to Renew an Objection or Offer of Proof.** Once the court rules definitively on the record--either before or at trial--a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

Pa.R.E. 103(a), (b).

Here, the trial court did not rule "definitively on the record" that all the evidence of Mr. and Mrs. Harris' guns would be excluded.  Rather, it said on the record that it could later reconsider its order, recognizing that trial could take an unexpected turn.  *See Commonwealth v. Hicks*, 91 A.3d 47, 54 n.9 (Pa. 2014) ("A pre-trial ruling on admissibility may help define the issues and the potential evidence, but the court retains the discretion to modify its ruling as circumstances develop or as the evidence at trial diverges from that which was anticipated.").

- 17 -

Notably, the trial court did reconsider its order. At the hearing the morning of trial, the trial court acknowledged that it had not considered that Vasquez could testify, and it later conceded that such testimony would be admissible. Vasquez did not move for the trial court to admit any other evidence regarding Mr. Harris' gun, such as the video or testimony from other witnesses. Therefore, the trial court granted the entirety of Vasquez's request—that he could personally testify to his observations.

Vasquez contends that the January 30, 2020 order is sufficiently clear that his earlier objections to the Commonwealth's motion *in limine* should be preserved. However, that order merely clarified the January 23, 2020, order, which the court said on the record that it was granting "without prejudice." Under these circumstances, the trial court had not ruled "definitively on the record" as contemplated by Rule 103(b). As such, Vasquez was required to renew his earlier offer of proof regarding additional evidence about the gun to preserve his evidentiary issue for review.

### III. Vasquez waived his Confrontation Clause issue.

Vasquez next challenges the trial court's admission, during his cross-examination, that six other Pagans involved in this incident, who did not testify at trial, entered guilty pleas to conspiracy, took responsibility, and were therefore in state prison. Vasquez's Brief at 38–46; *see* N.T. Vol. III, 2/6/20, at 154–157. He contends that this violated his rights under the Confrontation

Clause, as illustrated by the recent case of **Hemphill v. New York**, 142 S.

Ct. 681 (2022).

Vasquez has waived this issue. At sidebar, when the Commonwealth

announced its intent to introduce this evidence, Vasquez's counsel did not

object. He stated:

> Your Honor, my client's position is that [Barringer] never commissioned him. That conversation never happened, and he testified to the fact that these gentlemen pled guilty to these charges. [If t]he Court thinks it appropriate, he can ask him about it, if he wants to. They made that decision [to plead guilty].
>
> And I mean, from my standpoint, they're all charged with conspiracy. The fact that they pled guilty, I really don't want to argue that point, but I understand it's relevant. I don't know.

*Id.* at 145.

Because Vasquez did not make a timely objection or motion to strike,

he cannot now claim error in the trial court's allowing this evidence. Pa.R.E.

103(a)(1).

## IV. Vasquez's sentence is not an abuse of discretion.

Finally, Vasquez contends that the trial court abused its discretion in

imposing the maximum possible sentence, an aggregate of 20 to 40 years of

imprisonment. Vasquez's Brief at 46–60.

> Challenges to the discretionary aspects of sentence are not appealable as of right. **Commonwealth v. Leatherby**, 116 A.3d 73, 83 (Pa. Super. 2015). Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of

the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence; and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b), or sentencing norms. *Id.* An appellant must satisfy all four requirements. *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013).

*Commonwealth v. Miller*, 275 A.3d 530, 534 (Pa. Super. 2022). In determining whether an appellant has raised a substantial question, we "focus on the *reasons* for which the appeal is sought, in contrast to the *facts* underlying the appeal, which are necessary only to decide the appeal on the merits." *Commonwealth v. Goggins*, 748 A.2d 721, 727 (Pa. Super. 2000) (*en banc*).

Vasquez complied with the first three requirements to invoke this Court's jurisdiction over his sentencing claim. As to the fourth requirement, Vasquez claims that the sentencing court imposed an unreasonably excessive sentence, did not sufficiently state its reasons for doing so on the record, caused an unduly harsh result by imposing consecutive sentences, and relied on impermissible factors. We accept that this presents a substantial question and thus proceed to the merits.

This Court will vacate an above-guidelines sentence only if "the sentence is unreasonable." 42 Pa.C.S.A. § 9781(c)(3). We review a challenge to the discretionary aspects of sentencing mindful of the following standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse

of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Bankes**, 286 A.3d 1302, 1307 (Pa. Super. 2022) (quoting **Commonwealth v. Clemat**, 218 A.3d 944, 959 (Pa. Super. 2019)).

Vasquez argues that the sentencing court abused its discretion in imposing an aggregate 20-to-40-year term of imprisonment in several ways. First, he claims that the court failed to state or consider the applicable sentencing guidelines, and it treated Harris' severe injuries as exceeding those contemplated in the guidelines. Second, he claims that the court failed to consider his prior record score of zero and his lack of a history of violence. Third, he challenges the court's treatment of his testimony and subsequent silence as a failure to take responsibility, in light of his intent to preserve his case for appeal after exercising his right to trial.

The Commonwealth responds that the sentencing court was free to depart from the sentencing guidelines, as it placed its reasons for doing so on the record. It notes that, among other appropriate factors, the sentencing court considered Vasquez's violation of the court's no-contact order while awaiting his sentence. It concludes that Vasquez's sentence was reasonable.

The sentencing court explained at the time of sentencing why it was imposing a long sentence:

> [Q]uite frankly, I've never seen anything like this. I've never seen not only this total lack of remorse but total lack of responsibility. Every single person—according to Mr. Vasquez, every single person that testified was lying including the—his fellow members,

particularly Mr. Cochran, and all the other Codefendants that took responsibility, admitted their guilt, showed remorse. They must've all been lying when they did that according to [Vasquez].[7] The other bystanders from the club must've been lying as well. Of course, Mr. Katz, the expert, had to have been lying because he defined—he set forth all the reasons why the Pagans are an outlaw motorcycle gang engaged in criminal activity. But to Mr. Vasquez this was a brotherhood of guys who ride motorcycles and engage in charitable activities, so he was way off base according to you, Mr. Vasquez.

And then, of course, your friend, Zachary Yagnich, … was not being truthful because your testimony was at odds with his testimony. And of course the—your former fiancé[e], Ms. Granato, you've completely disparaged and indicate that she's lying, not only about this incident but the prior history of violence that you had between the two of you. And finally, the biggest liar of all is the videotape because the videotape is completely different from your testimony.

And … your Facebook post was attached to the presentence investigation, and frankly, … I always take these Facebook posts with a grain of salt. I'm not into it. I know that you were in jail so you weren't—I wondered how you could be directly responsible for a Facebook post, but then I hear you on tape dictating it, asking your parents if they saw it, and did you get any favorable comments to it. This is the farthest thing from any kind of remorse, responsibility, or any demonstration that you have the ability to be rehabilitated. You're on the videotape or video talking about the future of the Pagan organization, and how it's going to go when you get out. You're wishing harm on the other witnesses. And then there you are laughing with your Pagan friends on video while they're at the bar. And it's beyond just being disgruntled and upset about the verdict. And this continued up until—through April, the most recent one was April 18th.

For all these reasons, the Court feels that it is necessary to depart from the sentencing guidelines. I have to take into account the protection of the public. And again, this was in a public place,

_____

[7] The Commonwealth had cross-examined Vasquez about whether the other witnesses were lying. *See **Commonwealth v. Yockey***, 158 A.3d 1246, 1256 (Pa. Super. 2017). Because Vasquez did not object to this line of questioning, we find that it was appropriate for the sentencing court to consider it.

while on video, directly going toward the victim. Taking into account the protection of the victim and his family, the rehabilitative needs of the Defendant, which again I—you've demonstrated through your—from the outset and even after the verdict that—I don't see any potential for rehabilitation. The gravity of the offense, and the nature of the impact on the life of the victim and his family, it goes beyond aggravated—even though the jury found serious bodily injury, this is beyond that. This is beyond the protracted loss of an organ or vital bodily function. Mr. Harris nearly passed away and by all accounts will never be the same. And he'll never have the enjoyment of his family or be able to support his family again. All of your letters indicated what a family man you are and how your family needs you. Well, his needs him too, and he'll never again be available.

And yes, your—despite what you told the jury about the others just wishing to take a plea because they knew they were going to be railroaded, each expressed remorse for the victim's family, and knew that this was a terrible thing that they had done to him and his family. And for those reasons, the Court—seeing the need to provide for the protection of the public, the lack of any rehabilitative potential for the Defendant, the gravity of the offense, the effect [on] the life [of] the victim and his family and the community, and the protection of the public, the other witnesses, and the general public, the Court will depart from the sentencing guidelines . . . .

N.T., Sentencing, 5/22/20, at 24–27.

In its opinion on appeal, the sentencing court further explained its reasons for deviating from the sentencing guidelines:

First, [Vasquez] showed a complete lack of remorse for his actions and refused to take any sort of responsibility for his role in the assault of [Harris]. At the sentencing hearing, the Commonwealth played numerous video recordings of [Vasquez] from the correctional facility to his family and friends wherein [Vasquez] was laughing, downplaying the assault, and mocking the justice system. [In the recordings, Vasquez dictates] a Facebook post to his parents by which he is dismissing his guilt. [Vasquez] also makes several graphic comments wishing harm on witnesses Jamie Granato and Paul Cochran for testifying at his trial. On one video call, [Vasquez] is communicating with other Pagan members at a bar, laughing, and talking about his future with the Pagans,

despite his bond condition prohibiting contact with any member of the Pagans. [Vasquez's] lack of remorse and inability to take any responsibility for his actions justified the court's departure from the sentencing guidelines.

Furthermore, the court found that [Vasquez's] behavior demonstrated that he is not amen[]able to rehabilitation. Accordingly, a lengthy term of incarceration was warranted to protect [Harris] and the community. The court must also consider that the victim in this instance was assaulted so severely that he nearly died and his life had been irreparably changed due to the actions of [Vasquez] and his co-defendants.

Trial Court Opinion, 10/13/21, at 46.

We conclude that the sentencing court did not abuse its discretion. It indicated that it reviewed the presentence investigation report, which would include both Vasquez's prior record score and the appropriate sentencing guidelines. *See Bankes*, 286 A.3d at 1307 (citing *Clemat*, 218 A.3d at 959–60). As to the treatment of the Pagans who were sentenced pursuant to plea agreements, we note that such defendants are not similarly situated for sentencing purposes; therefore, Vasquez's comparatively harsher sentence does not demonstrate that he was punished for exercising his constitutional rights. *Commonwealth v. Ali*, 197 A.3d 742, 764 (Pa. Super. 2018) (citing *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010)), *appeal denied*, 652 Pa. 269 (Apr. 30, 2019). Because Vasquez has not shown that the sentencing court abused its discretion, we will affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/3/2023